## Sucesión Salas, Demandante y Apelada, *v.* Quintero, Demandado y Apelante.

No. 2813.—*Visto:* Febrero 9, 1923. *Resuelto:* Junio 16, 1924.

Ratificación de Arrendamiento—Compraventa de Finca Arrendada.—Un comprador que tenía conocimiento del arrendamiento y, actuando dentro de él, aceptó del primitivo arrendatario y de sus causahabientes el pago de cánones mensuales, de acuerdo con dicho contrato, no puede negarse a otorgar con éstos una escritura de confirmación del contrato simplemente porque como comprador no estaba obligado por el contrato de su vendedor, o porque no existía ninguna consideración independiente, nueva o adicional, o porque en el caso de tal compensación adicional entonces un nuevo contrato surge y el viejo deja de existir.

Sentencia de *Luis Campillo*, J. (San Juan, Primer Distrito), declarando con lugar demanda sobre ratificación de contrato, con costas. *Confirmada.*

*Guerra Mondragón & Soldevila,* abogados del apelante; *E. Acuña,* abogado de la apelada.

EL JUEZ ASOCIADO SEÑOR HUTCHISON, emitió la opinión del tribunal.

Los demandantes y apelados establecieron una acción para obligar al demandado, comprador de cierta propiedad arrendada, a otorgar una escritura pública, con el fin de que los demandantes como herederos y causahabientes del arrendatario fallecido pudieran hacer constar la prueba de sus derechos de acuerdo con el contrato de arrendamiento que existía anteriormente.

Alega la demanda, entre otros particulares, lo siguiente (itálicas nuestras):

"Que en 15 de septiembre de 1916 Zoila Dolores Salas Castro era dueña y poseedora en común proindiviso con sus hermanos Francisco Javier, Catalina y Juana Inés Salas Castro, en la proporción de una cuarta parte cada uno de la finca siguiente: (describiéndola):

"3. Que en dicho día 15 de septiembre de 1916 la referida Zoila Dolores Salas Castro celebró un contrato de arrendamiento con Francisco J. Salas Castro, causante de los aquí demandantes, por virtud del cual le cedió en tal concepto, término de diez años, vencederos en 15 de septiembre de 1926 y canon de $360.00 el primer año y $420.00 por cada uno de los nueve restantes, su participación indivisa en la finca antes descrita, conviniéndose que si durante la vigencia de dicho contrato, la finca descrita fuese objeto de división material entre los condueños, la parte que se adjudicara a la arrendadora continuaría sujeta a los efectos del mismo, y conviniéndose asimismo que el arrendatario quedaba facultado para la inscripción del arrendamiento en el Registro de la Propiedad.

"4. Que Zoila Dolores Salas Castro falleció en 6 de noviembre de 1919 bajo testamento abierto que otorgó en 22 de agosto del mismo año, en el cual instituyó por su único heredero a Juan Francisco Crespo y Salas, quien, con tal carácter, y cumpliendo instrucciones expresas de la testadora, en escritura de 30 de julio de 1920 en concurrencia con el arrendatario Francisco J. Salas Castro, confirmó y ratificó el contrato de arrendamiento alegado en el hecho tercero precedente.

"5. Que posteriormente o sea en 14 de julio de 1920 el dicho Juan Francisco Crespo y Salas vendió y traspasó al demandado

Demetrio Quintero y Salas su condominio indiviso de una cuarta parte de la finca descrita en el hecho primero de esta demanda.

"6. Que en 3 de octubre de 1920 el demandado Demetrio Quintero Salas en unión de los demás co-partícipes en dicha finca que entonces lo eran Catalina y Francisco Javier Salas Castro, Rafael Arrieta, Juan Francisco Salas y el propio demandado Demetrio Quintero Salas, procedieron a la división material del referido inmueble de 144 cuerdas, adjudicándose al demandado en pago de su condominio de una cuarta parte, una parcela de terreno que se describe así (describiéndola):

"7. Que a partir del referido día 3 de octubre de 1920, el causante de los demandantes Francisco J. Salas Castro *con el consentimiento del adjudicatario* de la parcela arriba descrita el demandado Demetrio Quintero Salas, *continuó en el uso y disfrute de la finca arrendada, satisfaciendo al mismo los cánones convenidos de conformidad con el contrato original* a que se refiere el hecho 3 de esta demanda.

"8. Alegan los demandantes que *como herederos y sucesores del arrendatario* D. Francisco J. Salas Castro y *con el consentimiento del demandado* Demetrio Quintero Salas *han continuado sin interrupción y continúan actualmente en el uso y disfrute de la finca arrendada, satisfaciendo al propietario dicho Demetrio Quintero y éste recibiendo de conformidad los cánones correspondientes de dicho arrendamiento.*

"9. Que ni Francisco J. Salas Castro ni sus herederos y sucesores aquí demandantes, han podido conseguir *que se practique en el Registro de la Propiedad la inscripción del referido contrato de arrendamiento,* pues el demandado después de verificada la división material de la finca se ha negado a otorgarles la correspondiente escritura pública de ratificación de dicho contrato; y alegan los demandantes que tal ratificación es necesaria *para que pueda verificarse dicha inscripción en el Registro de la Propiedad,* en cuanto se refiere a la parcela de 37 cuerdas 843 y media milésima de otra, descrita en el hecho 6 anterior que fué adjudicada al demandado y objeto del alegado contrato de arrendamiento."

El demandado establece apelación de una sentencia contra él dictada y alega lo siguiente:

"1. Erró la Corte de Distrito al declarar sin lugar la excepción previa aducida por el demandado.

"2. Cometió error la Corte de Distrito al declarar que por el

hecho de haber recibido el demandado unos cánones de arrendamiento se avino a respetar el arrendamiento previamente constituido por los anteriores dueños del condominio que adquirió el demandado.

"3. La sentencia es contraria a la evidencia, y, por ende, erró la Corte de Distrito por no haber desestimado la demanda.

La teoría del primer señalamiento es que la demanda no determina una causa de acción, pues no alega el conocimiento y ratificación por parte del demandado del contrato de arrendamiento que existía anteriormente, no demuestra ningún "pacto expreso para dejar vigente el arrendamiento," o que el comprador adquirente se hubiera "avenido y obligado a respetarlo." Expresiones semejantes a estas que aparecen en el alegato del apelante, así como en el tercer señalamiento, *supra,* indican que el demandado no entendió mal la teoría de la demanda en el sentido de que ésta envuelve una renuncia implícita por parte del demandado de su derecho de acuerdo con la ley a que termine el primitivo arrendamiento.

El artículo 1474 del Código Civil prescribe lo siguiente:

"El comprador de una finca arrendada tiene derecho a que termine el arriendo vigente al verificarse la venta, salvo pacto en contrario y lo dispuesto en la ley hipotecaria.

"Si el comprador usare de este derecho el arrendatario podrá exigir que se le deje recoger los frutos de la cosecha que corresponde al año agrícola corriente y que el vendedor le indemnice los daños y perjuicios que se le causen."

Es razonablemente lógico suponer que los abogados del apelante están bien familiarizados con la doctrina de ratificación en su sentido estricto y técnico según se entiende en la ley relativa al mandato y que igualmente conocen bien las autoridades inglesas y americanas sobre la materia de arrendamientos nulos y anulables, las distinciones establecidas en relación con esto y en el caso de un contrato de arrendamiento anulable, con referencia a la mera aceptación del canon de arrendamiento, a diferencia de tal aceptación unida a otras circunstancias concurrentes equivalentes a una con-

firmación de tal arrendamiento incluyendo también la teoría
de un nuevo arrendamiento con un nuevo término por en-
tenderlo así la ley en ciertas circunstancias de acuerdo con
el estatuto de fraudes. Pero el alegato del apelante no
trata de ninguna de estas cuestiones, y la inferencia lógica
es que los abogados entienden que el artículo del Código
Civil, *supra,* en tanto esté aquí envuelto, es un precepto le-
gal que debe ser interpretado a la luz de su origen en vez
de desde el punto de vista adoptado en los precedentes in-
gleses y americanos al interpretar la relación de mandante
y mandatario y la materia relativa a contratos de arrenda-
mientos nulos y anulables.

Examinando la fuente de nuestra propia ley, vemos que
la idea de una terminación *ipso facto* del arrendamiento por
virtud de la venta de la propiedad no es nueva.

La Ley XIX, Título VIII, de la Quinta Partida es como
sigue:

"Auiendo arrendado algund ome, o alogado a otro, casa, o he-
redamiento, a tiempo cierto, si el señor della la vendiere ante que
el plazo sea cumplido, aquel que la del comprare, bien puede echar
della al que la tiene alogada; mas el vendedor que gela logo, te-
nudo es, de tornarle tanta parte del loguero, quanto tiempo fincaba
que se deuia della aprouechar. Pero dos casos son, en que el arren-
dador de la cosa arrendada, non podría ser echado della, maguer
se vendiesse. El primero es, si fizo pleyto con el vendedor quando
gela vendio, que non le pudiesse echar della al que la touiesse logada,
fasta que el tiempo fuesse cumplido, a que la logo. El segundo es,
quando el vendedor la ouiesse logada, para en toda su vida de aquel
a quien la logara, para siempre también del, como de sus herederos.
Ca por qualquier destos casos non la podría enagenar, para poderle
echar della al que la tenía logada, o arrendada; ante dezimos, que
deue ser guardada la postura."

En un caso resuelto por la Corte Suprema de España
en julio 8, 1885, precisamente antes de la adopción del Có-
digo Civil español, tomo 58 de la Jurisprudencia Civil, pá-
gina 287, ciertos subarrendatarios fueron lanzados de la
propiedad por su arrendador, el primitivo arrendatario, por

falta del pago del canon de arrendamiento, después de una
venta de la propiedad en subasta pública.   La defensa, per-
fectamente admisible, y al parecer, suficiente, de ser cierta,
parece haber sido que el derecho de arrendamiento del de-
mandante había quedado extinguido por la venta de la pro-
piedad, y los apelantes alegaron haberse cometido las si-
guientes infracciones de ley:

"1º La Ley 19, tít. 8º, Partida 5ª y la doctrina legal, que esta-
blece que el arrandamiento concluye, entre otros modos, por extin-
guirse el derecho que sobre la cosa arrendada tiene el arrendador;
que en dicha ley se dice que el comprador de una finca arrendada
a otro podrá echar de ella al arrendatario; que éste tiene derecho
a que el vendedor le indemnice, mas no dice que si el comprador
calla es que aprueba el contrato y queda ligado a él; que además
en el caso de autos no se trata de una venta, sino de una sentencia
en que se declara a favor de ciertas personas la propiedad de los
bienes pertenecientes a una capellanía, y por consiguiente, creado
en un nuevo estado de cosas para aquellos bienes, vinieron a cadu-
car todas las relaciones jurídicas nacidas antes de aquella sentencia,
relaciones que para continuar era necesario que se crearan de nuevo,
según las reglas normales de la contratación; que aquí lo que su-
cedía es que el Taleus dejó de ser arrendatario, y por consiguiente,
concluyó el contrato de subarriendo celebrado con los recurrentes;
que éstos continuaron de hecho ocupando el molino, los únicos que
podían negarlos eran los nuevos dueños, ellos sólo quienes podían
desahuciarlos, pero Taleus no tenía ya absolutamente nada que ver
con el escrito:

"2ª La Ley 22, tít. 29, Partida 3ª, y el art. 1564 de la Ley de
Enjuiciamiento Civil, que apoyada en estas citas dice la sentencia
que Taleus como arrendatario posee las fincas a nombre del que se
las arrendó y que es parte legítima para promover el desahucio,
pero es inadmisible la aplicación que de dichos preceptos legales
hace dicho fallo tratándose del caso presente; que no podía atri-
buirse a Taleus el carácter de poseedor, puesto que ello significaba
infringir la autoridad de la *cosa juzgada,* y no debió admitírsele
como parte legítima para promover el desahucio, con arreglo al
art. 1564 de la Ley de Enjuiciamiento Civil:

3º La doctrina legal, de que es procedente el desahucio, cuando
el arrendatario no cumple las disposiciones estipuladas referentes
al pago de las rentas; que los recurrentes siempre pagaron religio-

samente al Taleus el precio del arriendo en los términos estipulados, pero al interponerse entre el arrendatario la ejecutoria y la toma de posesión referente al molino y secadero, no podían ya reconocer los recurrentes para el pago del arriendo otros dueños que los representados por D. Juan Bautista Grau, puesto que a ello se les requirió por el Alguacil y por ante el Escribano de aquellos autos.''

Al resolver las cuestiones de tal modo planteadas la corte se expresó en estos términos:

''Y que al declarar la sentencia recurrida haber lugar al desahucio solicitado por el arrendatario Taleus contra los subarrendatarios Insa y Mompó no infringe la ley 19, tít. 8º de la Partida 5ª, que se invoca en el primer motivo del recurso, porque esta ley, que sirve a la vez de fundamento al fallo, sólo concede al comprador de una finca arrendada la facultad de lanzar o de sostener al arrendatario, de manera que aun cuando el precepto de la ley constituyera una regla general para todos los casos traslativos del dominio y no una excepción del principio tan conocido, de que el contrato lo hace para sí y para sus sucesores, todavía subsistiría en todo su vigor el contrato de arrendamiento mientras no se hiciera uso de dicha facultad discrecional, y en el presente caso no sólo no se ha utilizado ese derecho, sino que los adjudicatarios de las fincas arrendadas han percibido del demandante Taleus el precio estipulado en el contrato, reconociendo así la subsistencia del celebrado con los mismos, aun que bajo el concepto entonces de administradores de las capellanías declaradas hoy de su propiedad:

''Y que tampoco infringe la sentencia la ley 22, tít. 29 de la Partida 3ª ni el art. 1564 de la ley procesal, porque subsistiendo, según queda expuesto, el contrato anterior, base del subarriendo, y la recíproca relación jurídica entre el dueño y el colono, y por precisión entre éste y los subarrendatarios, es incuestionable el derecho de Taleus para demandar de desahucio a Insa y Mompó desde el momento que dejaron de pagar a aquél como su único acreedor el trimestre anticipado, incurriendo en la pena de rescisión y lanzamiento a que se sometieron en su contrato particular de subarriendo, sin que obste la sentencia de adjudicación de las fincas ni la posesión conferida a los nuevos dueños, ni el reconocimiento para que se les reconociera como tales, porque todos estos actos y diligencias son independientes del arriendo y del subarriendo, y en nada alteran lo que las leyes tienen establecido para la constitución y desen-

volvimiento de esos contratos, siendo por lo tanto inaplicables al caso los fundamentos de impugnación contenidos en los motivos 2º y 3º, y por consecuencia precisa, los del 4º''

El artículo 1474, lo mismo que su original, confiere al comprador una opción con una doble disposición, aunque las dos condiciones prescritas no son idénticas a las especificadas en la ley anterior. En ambos casos el Código toma algo más en consideración los derechos de los arrendatarios. Un arrendamiento inscrito por un término de tres años es tan legal como lo era una cesión por vida o a perpetuidad en tiempo de las Partidas. En vez de un convenio con el vendedor al verificarse la venta todo lo que la ley ahora requiere es una estipulación, ya sea contemporánea a la venta o posterior a ella, expresa o tácita, ya haya sido hecha con el vendedor o el arrendatario, y ya con o sin causa o consideración, independiente, nueva o adicional. Ese fué el espíritu de la antigua ley como fué interpretada por la Corte Suprema de España, y el texto del Código al adoptar la interpretación dada a las Partidas hace desaparecer cualquier limitación que pudiera encontrarse en la letra del anterior precepto.

Por tanto Manresa, en la página 640, tomo 10 (2ª ed.) de sus Comentarios, dice:

''Posible es también el caso de que, no habiendo convenido el comprador con el vendedor en la renuncia de su derecho, lo estipule así por acto posterior con el arrendatario, a cambio, por ejemplo, de cualquier compensación económica. En ambos supuestos se aplicará la salvedad que establece el párrafo primero del art. 1571, pues habiendo consentido el adquirente en no hacer cesar el arrendamiento, ya el consentimiento lo haya prestado en concurrencia con el arrendador, ya con el arrendatario, siempre existe el pacto en contra que dice el precepto.''

Aun en los casos en los cuales el comprador adquiere y no ha perdido su derecho de exención, ningún privilegio recíproco de repudiación se confiere al arrendatario. El está obligado por su contrato, a menos y hasta que sea rele-

vado del mismo por algún acto indicativo de la intención
por parte del comprador de hacer uso de su opción. Sólo
en el caso de tal ejercicio es que procede la acción por daños
y perjuicios. Mientras tanto el contrato de arrendamiento,
si el comprador tiene conocimiento del mismo, real o inter-
pretativo, continúa subsistente. Lo más que puede decirse
en favor del comprador es que no necesita establecer una
acción ordinaria para terminar el arrendamiento, sino que
puede acudir directamente al procedimiento sumario de desa-
hucio.

A falta de alguna necesidad de novación del contrato
original, no es de aplicación el caso de *Lamboglia* v. *La
Junta Escolar de Guayama,* 13 D.P.R. 52, en el cual insiste
mucho el apelante.

En el presente caso no se pretende bien en la demanda
o en el alegato de los apelados, descansar de algún modo
en ninguna de las prescripciones de la Ley Hipotecaria en
el sentido de anular el derecho de los demandados a dar por
terminado el contrato de arrendamiento. La teoría de la
demanda es una renuncia de ese derecho y una aceptación
y adopción implícita del contrato de arrendamiento preexis-
tente, debido a la aceptación de varios plazos del canon de
arrendamiento de conformidad con el mismo y con conoci-
miento de él, una estipulación implícita con los demandan-
tes y su causante, por virtud de la cual el demandado está
impedido de alegar su derecho de exención que tiene por la
ley, de la obligación asumida por su vendedor, causaha-
biente del primitivo arrendador.

Un arrendatario tiene ciertos derechos aun en contra de
un comprador de la propiedad arrendada. Al arrendatario
no puede exigírsele que espere de mes a mes y de año en
año pendiente de que el nuevo propietario ejercite o nó su
derecho de opción. Aun a falta de cualquier estipulación
o acto positivo que indique la intención de seguir con el
arrendamiento, y admitiendo en pro del argumento que la
mera demora por parte del comprador por un término in-

definido e irrazonable no levanta la presunción de conformidad en un contrato de arrendamiento preexistente del cual él tiene conocimiento real, entonces al menos procedería una acción para obligar al propietario a elegir el camino que ha de seguir y ya para eximir al arrendatario de su contrato, o de otro modo ratificarlo en todas sus partes. Y un comprador que, teniendo conocimiento de un contrato de arrendamiento existente, ha aceptado el pago de cánones de arrendamiento con arreglo al mismo sin limitación, reserva o error de alguna clase, no puede luego ser oído para decir que él no consignará por escrito la obligación implícita que nace de tal conducta, simplemente porque como comprador no estaba obligado por el contrato de su vendedor, o porque no existía ninguna consideración independiente, nueva o adicional, o porque en el caso de tal compensación adicional entonces un nuevo contrato surge y el viejo deja de existir.

En el fondo, y en tanto se trata de resultados prácticos hay más analogía que la que a primera vista aparece entre el precepto estatutorio que ahora se considera y el artículo 2733 del Código de Louisiana, el cual es como sigue:

"Si el arrendador vende la cosa arrendada, el comprador no puede desalojar de la propiedad al arrendatario antes de haber expirado el contrato de arrendamiento a no ser que se haya estipulado lo contrario en el contrato."

Hay una diferencia, por supuesto, pero es más o menos superficial y más aparente que real.

Allí el comprador está obligado a menos que reserve su derecho. Aquí como en otras partes el comprador si tiene conocimiento del arrendamiento existente, sustituye a su vendedor, a menos y hasta que (y aquí estriba la diferencia) elija ejercitar su derecho legal de opción en casos en que esa opción surge.

Manresa, en la página 646, tomo 10 (2ª ed.), supra, también cita como concordantes los artículos 1503, 4, 5, 6 de la propuesta recopilación de 1851; 1741 a 1751 del Código

francés; 1597 a 1602 del italiano, y los artículos de los có-
digos de algunos otros países, ninguno de los cuales, sin
embargo, hemos examinado.

Y en la misma página concluye el comentario con el pá-
rrafo siguiente:

"No cerraremos el comentario de este artículo, sin exponer en
pocas palabras el juicio crítico que nos merece su doctrina, que no
es peculiar ciertamente de nuestro Código, puesto que es aun hoy
la generalmente admitida. La doctrina nos parece injusta; se trata
de un propietario que tiene cedido temporalmente el uso o disfrute
de sus fincas al arrendatario, y que durante el período en que ese
uso o disfrute no es suyo, lo cede, con beneplácito de la ley, a un
tercero que se supone ser, no obstante, el legítimo adquirente. Se
trata de un contratante en cuyas manos y a cuya voluntad se deja
el cumplimiento o incumplimiento de un contrato, que puede elu-
dir sin más que vender o simular que vende a un tercero la finca
que arrendó. Se trata, en fin, de una especie de privilegio conce-
dido al capital sobre el trabajo, ya que el cambio de dueño, faculta
a éste para dar por terminado el arriendo; pero no faculta al arren-
datario para adoptar una análoga resolución. El tiempo ha de ir
poniendo cada vez más de relieve doctrina tan anómala, dando a
cada interesado al fin, los derechos que legítimamente a cada uno
de ellos corresponden."

En esta Isla, sin embargo, donde no se permite a las
corporaciones poseer más de 500 cuerdas de terreno y el
arrendamiento de plantaciones de azúcar y tabaco en gran
escala es más o menos común, la ley puede actuar a veces
como una espada de dos filos. Esto ha sido bien ilustrado
en el caso de *López* v. *Central Eureka, Inc.*, 27 D.P.R. 291,
en el cual los vendedores parece que no tuvieron para nada
en cuenta cualquier responsabilidad por daños y perjuicios,
y la desventaja en que se encuentra un arrendatario debe
haber sido muy clara y penosa para el demandado.

En ese caso también es conveniente notar no sólo que no
hubo ninguna estipulación en el documento sino que la re-
ferencia a un contrato de arrendamiento preexistente revela

y no pretende de modo alguno ocultar una intención deliberada ya formada en la mente del comprador de lanzar al
arrendatario, si en verdad no fué ese el objeto principal del
traspaso de la propiedad.

Otro detalle característico interesante de la cláusula mencionada últimamente es que podría también considerarse como
un cumplimiento sustancial con los requisitos del estatuto
de Louisiana, si el precepto ya citado estuviera vigente en
esta jurisdicción.

Además, debe notarse, lo mismo aquí que en otra parte,
que la mención que hace nuestra ley de una estipulación es
lo que da a esta corte el derecho a expresar en el caso de
Eureka que: "Las palabras de la ley demuestran que el legislador tenía en mente el caso en que el comprador estaba
enterado de la existencia del contrato." Y esa declaración
es la clave de la conclusión a que llegó esta corte en ese
caso.

Teniendo presente el doble aspecto del artículo 1474, y
el hecho de que cuando se descansa en una estipulación, el
particular del estatuto referente al registro, no está envuelto,
no existe nada en las anteriores decisiones de esta corte que
necesariamente milite en contra del criterio expresado aquí.

En el caso de *Sosa v. Río Grande Agrícola Co.,* 17 D.P.R.
1149, esta corte, después de citar el artículo 1474 se expresó
en estos términos:

"En virtud de este artículo el comprador, salvo en los casos excepcionados en el mismo, tiene derecho a dar por terminado un contrato de arrendamiento existente. Salvo dichas excepciones, el contrato de arrendamiento entre el arrendatario y el primitivo dueño
es de carácter personal, y en tales casos el objeto del artículo 1474
es otorgar al comprador un dominio sin trabas sobre la finca comprada. * * * La ley hace entrega de la finca al comprador, si
éste así lo quiere, libre de toda traba, y desde el momento en que
al arrendatario se le notifica por el comprador su deseo de dar por
terminado el arrendamiento, como lo fué en el caso presente, si continúa en la posesión de la finca lo hace a beneplácito del dueño. . . .
La intención del artículo 1474 del Código Civil es evidente que es

eximir al comprador de la obligación de reconocer un arrendamiento existente, excepto en los casos especialmente marcados en dicho artículo.''

Y del caso de *López* v. *Central Eureka, Inc., supra,* en la página 293, citamos lo siguiente:

''En ninguna parte de la escritura, que fué debidamente inscrita en el registro, se hizo constar que el comprador se obligaba a respetar el contrato de arrendamiento celebrado por doña Margarita. . . . .

''Si el contrato de arrendamiento no se inscribe, entonces, de no existir pacto en contrario, queda en toda su fuerza el precepto del artículo 1474 relativo al derecho del comprador a que termine el arrendamiento vigente al verificarse la venta.''

Pero aun cuando los apelados estuvieran obligados a admitir que el contrato de arrendamiento por virtud del cual están ellos en posesión es ''anulable'', según se emplea ese término ordinariamente para describir un contrato que no es absolutamente ''nulo'', y estuvieran obligados a acudir a las fuentes inglesas y americanas en busca de la ley que regula el presente caso, todavía podrían encontrar alguna pequeña conformidad por vía de inferencia o de otro modo en varios precedentes en los cuales no estaba envuelta ninguna relación de mandante y mandatario, ya en los hechos o en la preponderancia de opinión (*ratio decidendi*), o de haberse sugerido remotamente en la primera se habría eliminado expresamente de la segunda. Sin penetrar en este aspecto de la cuestión ahora, podemos hacer referencia de paso al caso de *Jenkins ex rem Yate* v. *Church,* 98 English Reports Reprint, 1199; *Dos* v. *Butcher,* 99 id. 36; y *Anderson* v. *Connor,* 43 Misc. 384.

Claramente que en el presente caso la demanda pudo haber sido más específica y el demandado mediante moción hubiera tenido derecho a que así se hubiera ordenado antes de contestar. Quizás una excepción previa por ser dudosa y ambigua la demanda hubiera sido suficiente. Pero el consentimiento a la posesión continuada no solamente del pri-

mitivo arrendatario sino también de sus herederos y causa-habientes en unión del pago y aceptación del canon en ambos casos y de acuerdo con los términos y disposiciones del contrato original de arrendamiento, implica claramente tanto el conocimiento como la aceptación, adopción o confirmación de ese contrato; y la demanda, por defectuosa que pueda ser, apenas si puede decirse que no determina hechos suficientes para constituir una causa de acción si hemos de observar la regla de interpretación liberal que prevalece bajo nuestro sistema de alegaciones en nuestro código.

La corte inferior no declaró, como se dice en el segundo señalamiento, que la mera aceptación del canon equivalía a una confirmación del primitivo contrato de arrendamiento. El juez sentenciador declaró probado como cuestión de hecho que el demandado "conocía el contrato" y "actuó dentro de él;" también que los pagos mencionados en los recibos suscritos por el demandado representaban pagos de cánones de acuerdo con dicho contrato. El objeto y esfuerzo hecho por el apelante según ha sido expresado por el abogado en el alegato, es demostrar que los cánones de arrendamiento recibidos por el demandado "eran muy otros y no, como equivocadaménte juzgó el tribunal inferior, los estipulados en el contrato de los primitivos dueños."

El demandado es el sobrino de uno de los demandantes y primo hermano dos veces de los otros. El vive en la propiedad. A la fecha de la partición él y su madre eran los dueños de las dos casas situadas en la finca, con derecho a un condominio de una cuarta parte y, sujetos solamente a aquellos derechos que podrían tener los arrendatarios de otro condominio de dos cuartas partes, quedando pendiente a nombre de otras personas sólo un condominio de una cuarta parte y el usufructo de otra cuarta parte, ninguno de los cuales está envuelto en esta acción.

El demandado recibió un pequeño legado bajo el mismo testamento por virtud del cual su vendedor adquirió el condominio de una cuarta parte objeto de este pleito. En el

testamento se hace mención del contrato de arrendamiento de modo tal que no puede escaparse a la atención de cualquiera que lo lea. Tanto el testamento como la escritura de partición fueron redactados por el mismo notario, quien como abogado del demandado, fué consultado por él en cuanto al efecto legal de la presunción del contrato de arrendamiento en el registro de la propiedad, en vista de la negativa del registrador a inscribirlo, y de hacerse las usuales anotaciones preventivas.

Este mismo abogado dirigió dos cartas a los demandantes en los siguientes términos:

"Enero 28 de 1921.—La Sucesión de Don Francisco J. Salas, representada por Don Vicente Salas.—Toa Baja, P. R.—Señores: Por encargo de mi cliente Don Demetrio Quintero les notifico formalmente que una vez terminada la zafra del corriente año de 1921 deben desocupar y dejar a la libre disposición de su dueño Sr. Quintero, la parte de la finca 'Rincón Grande' que vienen ocupando y dedicando a la siembra de caña, por virtud de un arrendamiento que le hiciera la difunta Doña Zoila Dolores Salas a Don Francisco Salas, causante de Vds., con anterioridad a división material de la citada finca 'Rincón Grande.'—Está demás recordarles, puesto que ya se les ha hecho saber, que el Sr. Quintero compró estos terrenos para trabajarlos él y no arrendarlos, y aunque aguarda que Vds. piquen la caña que tienen sembrada nunca ha pensado arrendárselos y mucho menos reconocer el arrendamiento que en cuanto a él carece de toda fuerza o validez legal.—Valga, pues esta notificación para los fines indicados.—Atentamente, * * * Abogado del Sr. Quintero.

"Abril 5 de 1921.—La Sucesión de Don Francisco J. Salas, representada por Don Vicente Salas, Toa Baja, P. R.—Señores: Por encargo de mi cliente Don Demetrio Quintero llamo a Vds. la atención sobre el contenido de mi anterior de fecha 28 de enero pasado, la cual no se han dignado Vds. contestar.—El Sr. Quintero tiene noticias que están preparando para seguir sembrando cañas para la cosecha del año de 1922 en la parte de la finca de 'Rincón Grande,' de su propiedad, que actualmente ocupan por virtud de su tolerancia a fin de que cosechen la caña de este año que tienen allí sembrada.—Permita que reitere el aviso formal que en mi anterior le diera de que de ningún modo ha de permitir el Sr. Quintero que

sigan ocupando dichos terrenos después de terminado el pique de caña de este año. Teniendo en cuenta este aviso no deben de ninguna manera preparar terreno para siembra nueva y prepararse al contrario para desalojar la finca.—El Señor Quintero desea que se arregle este asunto amigablemente por tratar de parientes y abriga la seguridad de que dándose Vds. cuenta de la verdadera situación de las cosas le eviten la necesidad de recurrir a otros medios para que le dejen en el libre goce de una propiedad sobre la cual no tienen Vds. derecho alguno.—Atentamente,   *   *   *   Abogado y Notario.''

Los demandantes dicen que nunca recibieron ninguna de estas cartas. Si las recibieron o nó es cosa que importa poco toda vez que el demandado admite haber firmado dos recibos que dicen así:

''He recibido de Don Francisco J. Salas la suma de ochenta dólares, intereses correspondientes a los meses de Sept. y Oct. por el arrendamiento de un lote terreno que pertenecía anteriormente a Doña Zoila D. Salas.—Demetrio Quintero.—Sept. 17 de 1920.''·

''He recibido de Doña Vicenta Quintero la suma de ciento veinte dólares (120.00) intereses correspondientes a los meses de noviembre, diciembre y enero de 1921, por arrendamiento de un lote de terreno de mi propiedad.—Fdo. Demetrio Quintero.—Marzo 4, 1921.''

No consta que el demandado tomara la precaución de conocer la opinión de su abogado sobre el efecto legal de estos dos documentos antes de firmarlos.

El abogado del apelante recalca el hecho de que el canon mensual mencionado en los dos recibos es mucho más del tipo especificado en el contrato de arrendamiento. Pero los demandantes explicaron que esto se debía al alza en el precio del azúcar.

La explicación dada por el demandado era que él había convenido permitir al demandante recoger la cosecha de azúcar pendiente y al principio se negó a aceptar cualquier canon por los pocos meses que faltaban con tal fin, pero finalmente cedió a la insistencia del demandante. Pero esto no explica por qué los demandantes insistieron tan asidua-

mente en el pago no sólo del canon estipulado por virtud del contrato original, sino también en el pago de una suma adicional de $5 mensuales, a pesar de su privilegio de acuerdo con la ley de cosechar la caña sin la necesidad de hacer tal pago. Por otra parte, la actitud del demandado, o al menos de su padre con relación a la amenazada repudiación del contrato de arrendamiento era un aliciente particularmente persuasivo por el ligero aumento en el tipo si como alegan los demandantes fué entendido que era una mera modificación de los plazos prescritos en el primitivo contrato.

El aumento en el precio del azúcar no sólo hizo factible esta modificación sino que también quizás es la explicación más lógica de toda la controversia.

Los recibos se refieren al arrendamiento y el primero de los dos documentos menciona los nombres, no de los demandados causantes inmediatos sino el del primitivo arrendador como anterior dueño.

La vaga y evasiva declaración del demandado evidentemente que no satisfizo a la corte inferior ni tampoco a nosotros en cuanto a la existencia de cualquier nuevo contrato de arrendamiento. A falta de algún otro semejante contrato la inferencia natural es que el canon pagado y aceptado era el vencido con arreglo al anterior contrato, después de una ligera modificación del mismo en cuanto al importe.

El conocimiento del demandado de·que existía el anterior contrato de arrendamiento excluye prácticamente la posibilidad de cualquiera otra conclusión. No solamente dejan poco o ningún motivo de duda sobre este punto las cartas y declaración del anterior consejero legal del demandado, por no hablar de las demás circunstancias arriba citadas, sino que el padre del demandado que primeramente notificó a los demandantes la intención de repudiar el contrato de arrendamiento, admite tal conocimiento.

Del interrogatorio de repreguntas de este testigo trans-
cribimos lo siguiente:

"A. De modo que cuando Vd. le dijo eso el Sr. Quintero sabía
que ellos tenían la finca poseída, estaban poseyendo la finca?

"T. Si, Señor.

"A. ¿Y en concepto de arrendamiento?

"T. De eso. no se yo.

"A. ¿Antes de eso Vd. no sabía que la finca hacía tiempo que
venía poseida por la sucesión Salas?

"T. La habían arrendado.

"A. ¿De modo que cuando Vds. la compraron sabían que estaba
arrendada a la sucesión Salas?

"T. El decía que la tenía arrendada. Yo no se si era arren-
dada o en qué forma la tenía, porque él antes la poseia sin arrenda-
miento y después fué que la arrendó.

"A. ¿Cuánto tiempo hace que la viene poseyendo en ese con-
cepto de arrendamiento?

"T. Yo me supongo, no tengo dato ninguno de fecha, pero más
o menos calculo que habrán de 7 a 8 años.

"A. ¿Todo ese tiempo la ha venido poseyendo la sucesión Salas?
"T. Si, señor."

Cualquier notificación que este testigo hubiera hecho fué
recibida después del pago y aceptación del canon. Pero aun
siendo de otro modo no existe ninguna prueba de estar au-
torizado el padre a hablar a nombre del hijo.

El propio demandado declaró respecto a una notificación
verbal que él hizo al causante de los demandantes en su le-
cho de muerte. Pero toda referencia acerca de este inci-
dente fué omitida por el demandado en su primera compa-
recencia como testigo, y la conversación parece que tuvo lu-
gar, si la hubo, después o casi al mismo tiempo de firmarse
el recibo de fecha septiembre 17 de 1920.

Por tanto, estas tentativas de repudiación así como las
cartas del abogado del demandado llegaron demasiado tarde.

Para los fines de esta opinión puede admitirse sin resol-
verse, que el comprador de una propiedad inmueble con co-
nocimiento real de que existe un contrato de arrendamiento

por diez años, acreditado esto por documento público en que
consta una cláusula expresa de seguir con el mismo en el
caso de una partición y debidamente ratificado o confirmado
por su vendedor, aunque en la escritura de venta no se men-
cione ni en el subsiguiente documento de partición, no está
obligado por los términos de tal contrato anterior, pero
tiene que informarse de su contenido, por lo menos en lo
que respecta al ejercicio de su privilegio legal de repudia-
ción; y no puede permitírsele que haga primero una cosa
y después otra aceptando el canon con arreglo al mismo
sin ninguna limitación o reserva y después hacer una noti-
ficación perentoria para que se desaloje la propiedad. El
no puede desprenderse de una cosa y seguirla reteniendo.

*Debe confirmarse la sentencia apelada.*

Los Jueces Asociados Sres. Wolf y Aldrey disintieron.